FILED

2008 Jun-27  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JUDY BRANNON,

      Plaintiff,

v.                                  CV-07-J-1616-S

BELLSOUTH SHORT TERM
DISABILITY PLAN,

      Defendant.

## <u>MEMORANDUM OPINION</u>

This case comes before the court on the plaintiff's appeal of the denial of

short term disability ("STD") benefits by Broadspire Services, Inc., the

independent third party claims administrator for the BellSouth STD Plan.  The

defendant filed a motion for summary judgment (doc. 27), brief, and evidence in

support of said motion (doc. 28 and attachments 1-6 to doc. 28), to which the

plaintiff filed a brief and evidence in opposition (docs. 35 & 36).  The defendant

thereafter filed a reply (doc. 40).  The plaintiff also filed a motion for summary

judgment (doc. 29) and evidence and a memorandum in support of said motion

(docs. 30 & 31), to which the defendant filed a brief in opposition (doc. 38).  The

plaintiff thereafter filed a reply[1] (doc. 39).

Upon consideration of the pleadings, memoranda and evidentiary

submissions received, the court concludes that the defendant's motion for

summary judgment is due to be granted as the defendant is entitled to judgment as

a matter of law in its favor.

### Factual Background

At all relevant times the BellSouth Corporation ("BellSouth") was the STD

Plan sponsor and administrator.  STD Summary Plan Description ("SPD")

attached as exh. 2 to doc. 28 at 16.  BellSouth, however, delegated to Broadspire

the duty to administer all claims for STD Plan benefits.  *Id*.  The SPD states that as

the claims administrator, Broadspire has "complete discretionary authority to

determine under the plan and to interpret the terms and provisions of the Plan

regarding Short Term Disability benefit matters.  [Broadspire's] determinations

and interpretations are final and conclusive."  *Id*.

Under the STD Plan, a person is eligible for benefits if he or she becomes

disabled while a participant and satisfies all other applicable terms and conditions

---

[1]The plaintiff's reply brief is incorrectly titled a reply brief in opposition to the Plan's motion for summary judgment (doc. 39).  Document 39 is actually the plaintiff's reply to the Plan's response in opposition to the plaintiff's motion for summary judgment.

of the Plan.  STD Plan attached as exh. 1 to doc. 28 at 6.  The STD Plan defines a

disability as follows:

> "Disability" means as of the eighth consecutive calendar
> Day of Absence a medical condition supported by
> objective medical evidence, which (i) makes a
> Participant unable to perform any type of work as a
> result of a physical or mental illness or an accidental
> injury or (ii) results in a Participant receiving treatment
> that qualifies as a Chemical Dependency Confinement.
> "Any type of work" includes the following regardless of
> availability: (a) the Participant's regular job with or
> without accommodations, (b) any other Participating
> Company job with or without accommodations, or (c)
> temporary modified duties.  "A Participating Company
> Job" is any job within a Participating Company; or any
> job outside a Participating Company which is
> comparable in skills and functions.

*Id*. at 5.

At the time of her alleged disability, the plaintiff, Judy Brannon, was

employed by BellSouth in the position of Special Service Representative, a

sedentary job working at a desk located in a call center handling incoming

customer telephone calls.  Administrative Record ("AR") attached as exh. 3 to

doc. 28 at 0037, 0071.[2]  On August 12, 2005, the plaintiff stopped working due to

depression and anxiety.  AR at 0054.  Although the plaintiff had been treated for

---

[2]All cites to the administrative record are to page numbers stamped on the record
submitted by the defendant.

3

depression and anxiety since 2000, a conflict with her supervisor worsened her symptoms to the point where she could no longer function. AR 0006, 0020. At the time, the plaintiff was under the care of Dr. Shawn Harvey, a psychiatrist, and Kathy Sechriest, a licensed professional counselor. *Id*. A Behavioral Health Clinician Statement ("statement") prepared by Ms. Sechriest states that she advised the plaintiff to stay home on August 11, 2005, because the plaintiff's conditions had worsened to the point where she was experiencing suicidal and homicidal thoughts. *Id*. at 006. Moreover, the plaintiff was unable to remember anything, handle any demands on her, or handle any stress. *Id*. According to the report, the plaintiff was taking Leripro, Xanax, Fiorinal, and Lematil for her impairments. *Id*. at 0007. Ms. Sechriest gave the plaintiff a Global Assessment of Functioning ("GAF") score of 45, which was an improvement over the 40 which Ms. Sechriest gave to the plaintiff when she initially left work. *Id*. Ms. Sechriest projected that the plaintiff would be able to return to work by November 1, 2005. *Id*.

A statement prepared by Dr. Harvey also recommended the plaintiff stay home from work on August 11, 2005. AR at 0008. Dr. Harvey found that the plaintiff was only capable of concentrating for ten minutes at a time. *Id*. Dr. Harvey's evaluation of the plaintiff's emotional functioning states that the plaintiff

was experiencing daily anxiety attacks of up to thirty minutes in length.  AR at

0008.  Dr. Harvey further states that the plaintiff was not having suicidal or

homicidal thoughts.  *Id*. at 0009.  Finally, Dr. Harvey projected that the plaintiff

would be able to return to work by October 31, 2005.  *Id*.

On October 18, 2005, Ms. Sechriest faxed a letter to Broadspire on behalf of

the plaintiff.  AR at 0020.  Ms. Sechriest wrote that the information in the report

prepared by her on September 2, 2005, was still valid.  *Id*.  She also stated that Ms.

Sechriest was unable to work at the present time.  *Id*.

A second statement was submitted by Ms. Sechriest on November 10, 2005.

AR 0034-35.  Ms. Sechriest stated that the plaintiff's symptoms had worsened to

the point where she was having suicidal and homicidal thoughts.  *Id*. at 0034.  Ms.

Sechriest assigned the plaintiff a GAF of 45.  *Id*. at 0035.  When asked to project

when the plaintiff could return to work, Ms. Sechriest responded that the plaintiff

would likely not be able to return to work, possibly for several months.  *Id*.

Dr. Harvey also provided a second statement on December 5, 2005.  AR

0037-38.  Dr. Harvey stated that the plaintiff was having suicidal thoughts, but not

homicidal thoughts.  *Id*. at 0038.  He noted a passive death wish.  *Id*.  Dr. Harvey

assigned the plaintiff a GAF of 45 and said that she would be able to return to

work by February 1, 2006.  *Id*.

5

Ms. Sechriest submitted a third statement on December 7, 2005.  AR 0042.

Ms. Sechriest assigned the plaintiff a GAF of 45 and concluded that she was

unable to return to work at that time.  *Id*.  Ms. Sechriest provided a fourth

statement on January 5, 2006, which assigned the plaintiff a GAF of 45 and stated

that the plaintiff was still unable to return to work.  AR 0051.

On January 16, 2006, a peer review was completed by Dr. Elana

Mendelssohn, a psychologist.  AR 0053-54.  Dr. Mendelssohn concluded that the

medical evidence supported a functional impairment from January 16, 2006, until

February 16, 2006.  *Id*. at 0054.  Dr. Mendelssohn based this conclusion on the

three most recent statements provided by Ms. Sechriest and the most recent

statement provided by Dr. Harvey.  *Id*. at 0053.  Dr. Mendelssohn notes that "it

appears the claimant has demonstrated slight improvement since the last update.

However, the claimant continues to evidence a level of impairment that would

likely interfere with her ability to perform any occupation."  *Id*. at 0054.

On January 24, 2006, Dr. Harvey provided an updated statement that found

that the plaintiff was unable to return to work at that time due to depression and

impairments in judgment.  AR 0057.

On February 9, 2006, Ms. Sechriest provided an updated statement.  AR

0063.  Ms. Sechriest assigned the plaintiff a GAF of 45 and concluded that the

6

plaintiff could not return to work at the present time. *Id.* She noted the plaintiff had short term memory deficits and an inability to stay focused. *Id.*

Broadspire initially denied the plaintiff's claim for STD benefits on August 19, 2005. AR 0016. After receiving additional medical information concerning the plaintiff's impairments, Broadspire approved STD benefits from August 19, 2005, through November 11, 2005, based on the plaintiff's major depression. AR 0027, 0072. Broadspire subsequently extended the plaintiff's STD benefits through February 20, 2006. AR 0053-54. The plaintiff's entitlement to benefits through February 20, 2006, is not disputed by the parties.

However, on February 15, 2006, Broadspire notified the plaintiff that, based on the medical evidence, the plaintiff no longer met the definition of "Disability" under the STD plan. AR 0065. The notification also stated that if the plaintiff chose not to return to work, continued benefit payments would be paid contingent on the results of an Independent Medical Examination ("IME"). *Id.*

On March 6, 2006, an IME was conducted by Dr. Thomas J. Boll. *Id.* at 0068. According to the report, the plaintiff

> did not demonstrate any emotional dyscontrol. She
> demonstrated good ability to show appropriate affect and
> her affect was appropriate to the content of the
> conversation discussed. There were no dramatic shifts or
> any evidence of emotional lability. Ms. Brannon did not

7

> demonstrate any cognitive impairment with attention,
> concentration, or memory despite complaints to the
> contrary. . . . She demonstrated no cognitive impairment.
> She did not demonstrate any impairment in reality testing
> and specifically denied delusions and hallucinations.
> She did not demonstrate any clinically significant
> behavioral symptoms.

*Id.* at 0068.  The Wechsler Adult Intelligence Scale-III was administered to the

plaintiff.  *Id*. at 0069.  Dr. Boll opined that the plaintiff's lifelong abilities were in

the low average range.  *Id*.  Two malingering tests were also administered to the

plaintiff.  *Id*.  One was borderline and the other was in the abnormal range  *Id.*

Following the IME, Broadspire obtained a peer review assessment of the

plaintiff on March 15, 2006, from Dr. Leonard Schnur, a psychologist, for the time

period from February 20, 2006 to present.  AR 0071-73.  In completing his

assessment, Dr. Schnur reviewed the IME prepared by Dr. Boll and three of the

reports from Ms. Sechriest and Dr. Harvey.  *Id*. at 0071.  Specifically, the three

reports in the file were Ms. Sechriest's reports from September 2, 2005, and

October 18, 2005, and Dr. Harvey's report from September 12, 2005.  *Id*.  Dr.

Schnur noted that the documentation provided by Dr. Harvey and Ms. Sechriest all

predated the time period under consideration.  *Id*. at 0072.  Thus, one of Dr.

Schnur's findings was that additional documentation from Dr. Harvey and Ms.

Sechriest would be helpful in assessing the plaintiff's case.  *Id*.

8

Dr. Schnur agreed with Dr. Boll's conclusions finding that there was a "lack of examination findings to substantiate a psychological impairment across the areas of cognitive, emotional, and behavioral functioning which would preclude the claimant from performing work at any occupation.  The documentation does not support a functional impairment for the time period 2/20/06 through the present."  *Id*. at 0072.  Dr. Schnur further stated that the "claimant's subjective complaints of emotional distress were not substantiated through examination findings."  *Id*.

On March 20, 2006, the plaintiff was awarded Social Security disability benefits beginning in February 2006.[3]  AR 0061.  The plaintiff also applied for and received a leave of absence from her position effective February 20, 2006.  *Id*. at 0089.

On March 27, 2006, Broadspire sent the plaintiff a letter explaining to her that she did not qualify for STD benefits and that the denial was retroactive to February 20, 2006.  AR 0077.  The letter also informed the plaintiff of her right to

---

[3]The awarding of benefits under the Social Security Act is not proof of disability for purposes of ERISA.  "[T]he Court 'owes no deference to findings made under the Social Security Act.'"  *Richards v. Hartford Life and Accident Ins. Co.,* 356 F.Supp.2d 1278, 1288 (S.D.Fla.2004); *see also Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1314 (11th Cir. 1999) ("[T]he approval of 'disability benefits' by the SSA is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan.") (citing *Paramore v. Delta Airlines, Inc.,* 129 F.3d 1446, 1452 n. 5 (11th Cir. 1997).

appeal the decision within 180 days and of her right to submit additional medical information for review.  *Id*.

The plaintiff filed a first level appeal of Broadspire's decision on April 4, 2006.  AR 0083, 0086.  On May 4, 2006, Broadspire obtained a peer review assessment of the plaintiff from Dr. Lawrence Burstein, a psychologist.  AR 0094-97.  Dr. Burstein reviewed all of medical evidence pertaining to the plaintiff.  *See id.*  Dr. Burstein found that the medical evidence did not support a functional impairment from February 20, 2006, to the present.  *Id.* at 0095.  Dr. Burstein concluded that the opinions of the plaintiff's medical providers, that the plaintiff could not return to work, were not supported by examination findings.  *Id*. at 0096.  Specifically, Dr. Burstein stated that the most recent update provided by Dr. Harvey did not indicate that the plaintiff's symptoms were persisting.  *Id*. at 0095.  Dr. Burstein noted that the independent psychological evaluation had failed to detect impairments that would preclude all occupations.  *Id*. at 0096.  Therefore, Dr. Burstein found that "the information does not support a functional impairment that would have precluded the claimant from all occupations, from a psychological perspective, from 2/20/06 onward."  *Id.*

On May 18, 2006, Broadspire denied the plaintiff's first level appeal.  AR 0098-101.  Broadspire informed the plaintiff that she could file a second level

10

appeal within 180 days of the denial of the first level appeal.  *Id*. at 0100.  The

letter also stated that the plaintiff should provide additional medical evidence in

support of her claim.  *Id*.

On May 22, 2006, the plaintiff filed a second level appeal of Broadspire's

decision.  AR 0114.  As part of her second level appeal, the plaintiff submitted a

letter from Ms. Sechriest which details her treatment of the plaintiff and the

plaintiff's subjective complaints.  *Id*. at 0123.  The letter from Ms. Sechriest is

dated June 26, 2006.  *Id*.  Ms. Sechriest concluded that the plaintiff's "symptoms

have not improved in the last year and preclude her from working at any job."  *Id*.

Ms. Sechriest stated that the plaintiff continued to suffer from major depression

and panic disorder with agoraphobia.  *Id*.  No new treatment records accompanied

this letter.

On July 20, 2006, Broadspire obtained a fourth peer review of the plaintiff

from Dr. Bunny Falk, a clinical psychologist.  AR 0127-29.  After reviewing the

plaintiff's entire file, Dr. Falk found that the "documentation submitted for review

does not support the presence of a functional impairment, from a psychological

perspective, that would prevent the [plaintiff] from working at 'any occupation'

for the time frame 2/20/06 through the present."  *Id*. at 0128.  Dr. Falk stated that a

"significant portion of the documentation predates the time frame in question."  *Id*.

With regard to the letter submitted by Ms. Sechriest on June 26, 2006, Dr. Falk found that it failed "to provide examples of how [the plaintiff's] symptoms would prevent the [plaintiff] from working at any occupation at all." *Id*.

The plaintiff's second level appeal was denied by Broadspire on August 22, 2006. AR 0133. The denial stated that the additional information received did not support the inability to perform any or all types of work, particularly sedentary work. *Id*. at 0134. Broadspire informed the plaintiff that this second level appeal denial was final, that the plaintiff had exhausted all mandatory appeal procedures, and that she had the option of filing a civil action. *Id*. at 0135. The letter did not inform the plaintiff that she had any particular time limit to file a civil action under the STD plan. *Id*. The plaintiff filed her complaint in this case on September 6, 2007 (doc. 1).

### Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ERISA cases, "the plaintiff has the burden of proving her entitlement to

contractual benefits." *Richards v. Hartford Life & Acc. Ins. Co.*, 153 Fed. Appx.
694, 696 (11th Cir. 2005); citing *Horton v. Reliance Standard Life Ins. Co.*, 141
F.3d 1038, 1040 (11th Cir. 1998).  The Eleventh Circuit Court of Appeals has set
out the following steps to apply in reviewing "virtually all ERISA-plan benefit
denials:"

> (1) Apply the *de novo* standard to determine whether the claim
> administrator's benefits-denial decision is "wrong" (i.e., the court
> disagrees with the administrator's decision); if it is not, then end the
> inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then
> determine whether he was vested with discretion in reviewing claims;
> if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was*
> vested with discretion in reviewing claims, then determine whether
> "reasonable" grounds supported it (hence, review his decision under
> the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse
> the administrator's decision; if reasonable grounds do exist, then
> determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, then apply heightened arbitrary and
> capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecommunications, Inc*,. 373 F.3d 1132, 1138 (11th
Cir.2004).

### Discussion

The defendant argues that summary judgment should be granted in its favor for two reasons: (1) the plaintiff failed to file this action within the 180 day limitations period provided in the STD plan;[4] and (2) Broadspire's denial of STD benefits was correct.

> *Whether Broadspire's decision to deny STD benefits to the plaintiff was correct.*

The issue before the court is whether the factual finding of the defendant, namely that the plaintiff is not disabled from "any occupation," is correct. Applying the rules set forth in *Williams*, 373 F.3d at 1138, the court must first determine whether the decision of the defendant was "*de novo* wrong." If the decision was not "wrong," the court must affirm the administrator's decision. *Id*. The court is limited in its consideration of the evidence to the information known to the administrator at the time the decision was made. *See e.g., Jett v. Blue Cross and Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989); *Lee v. Blue Cross/Blue Shield of Ala.,* 10 F.3d 1547, 1550 (11th  Cir.1994).

Broadspire made its decision that the plaintiff was not disabled from February 20, 2006, forward on March 27, 2006.  Broadspire first notified the

---

[4]Defendant has withdrawn that portion of its summary judgment motion based on the limitations issue.

plaintiff on February 15, 2006 that her benefits would end.  In the notification Broadspire specifically requested that the plaintiff submit additional evidence in support of her claim.  The plaintiff, however, failed to provide any additional evidence of her disability prior to Broadspire's decision to terminate STD benefits on March 27, 2006.  Thus, the only evidence that Broadspire had before it when it initially denied the plaintiff's claim was the statements from Dr. Harvey and Ms. Sechriest, the peer review completed by Dr. Mendelssohn, the IME completed by Dr. Boll, and the peer review completed by Dr. Schnur.

The last update from Dr. Harvey was submitted on January 24, 2006, after Dr. Mendelssohn completed her peer review finding the plaintiff had a functional impairment.  Notably, Dr. Harvey's update does not project a return to work date, however Dr. Harvey states that he discussed returning to work with the plaintiff.

Ms. Sechriest's final update was submitted on February 9, 2006 after Dr. Mendelssohn's peer review.  The update states that the plaintiff is unable to work at that time.  Ms. Sechriest provides no other findings concerning how long she expected the plaintiff's symptoms to persist.  The updates from Dr. Harvey and Ms. Sechriest provide little to no specific evidence about whether the plaintiff's disability was expected to continue beyond February 20, 2006.

Broadspire was not bound to give the opinions of the plaintiff's treating

15

physicians special deference when it evaluated the merits of the plaintiff's claim for continued benefits.  Rather ERISA requires "full and fair" assessment of the plaintiff's claims.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825, 123 S.Ct. 1965, 1967, 155 L.Ed.2d 1034 (2003).   The Supreme Court has explicitly stated that this standard does not require giving a treating physician's opinion more weight than that of other evidence.  *Id.*, 538 U.S. at 825, 123 S.Ct. at 1967 ("We hold that plan administrators are not obliged to accord special deference to the opinions of treating physicians.  ERISA and the Secretary of Labor's regulations under the Act require 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials ....  But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition").  The Eleventh Circuit has instructed the district courts that an administrator's determination must be upheld if it has a reasonable factual basis, even if the record also contains contrary information.  *Slomcenski v. Citibank*, *N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005).  The evidence before this court establishes that the defendant satisfied these rights.

When it made its decision, Broadspire had the IME conducted by Dr. Boll and the peer review performed by Dr. Schnur.  The IME included objective

medical evidence that the plaintiff did not have a medical condition that would prevent her from performing "all occupations."  In forming his opinion, Dr. Schnur primarily relied on Dr. Boll's conclusions because the evidence from Dr. Harvey and Ms. Sechriest predated the time period under examination.  Based on the evidence in the plaintiff's file, Dr. Schnur concluded that there was a lack of examination findings to substantiate a psychological or functional impairment.[5]

When the evidence that was before Broadspire on March 27, 2007, is considered, this court cannot find that Broadspire's decision was "wrong." Although the plaintiff was encouraged to submit additional evidence for the time period post-dating February 20, 2006, she failed to do so.  The only evidence that was before Broadspire that concerned the relevant time frame was Dr. Boll's IME and Dr. Schnur's peer review.  Those medical opinions both conclude that the plaintiff was capable of returning to work.

After making its initial decision, Broadspire requested two additional peer reviews.  The first of these was conducted on May 4, 2006, by Dr. Burstein.  Dr. Burstein reviewed Dr. Harvey's statement from January 24, 2006, and found that

---

[5]The court also notes that Dr. Harvey and Ms. Sechriest repeatedly mention that the plaintiff's problems stem, in part, from a conflict with her supervisor.  However, under the STD Plan, the plaintiff had the burden to show she could perform no job, and not just the particular job she had.

Dr. Harvey's findings were not supported by examination findings.  Furthermore, Dr. Burstein found that there was no indication that Dr. Harvey's findings would preclude the plaintiff from returning to work at any job.   Similarly, Dr. Burstein's review of Ms. Sechriest's most recent statement found that Ms. Sechriest's findings would not prevent the plaintiff from working at any job.

The only medical evidence submitted by the plaintiff in support of her claim after February 20, 2006,  was a letter from Ms. Sechriest submitted on June 26, 2006.  The letter includes no objective medical evidence which demonstrates that the plaintiff has a medical condition or mental impairment which prevents her from performing any job.  Instead the letter is a summary of the plaintiff's subjective complaints and treatment history that began in November of 2005.  The letter fails to provide examples of how the plaintiff's symptoms would prevent the claimant from working at any occupation.

Upon receipt of Ms. Sechriest's June 26, 2006, letter, Broadspire ordered a third peer review of the plaintiff's file by Dr. Falk.  Dr. Falk found that, even considering Ms. Sechriest's letter, there was no medical evidence to support a functional impairment from February 20, 2006, to the present time.

The court is of the opinion that, given the evidence before the defendant at the time it made its decision, that decision was not "wrong."  The plaintiff has the

burden of proving she is disabled.  *Reeve v. Unum Life Ins. Co. of America,* 170

Fed.Appx. 108, 112 (11th Cir. 2006); citing *Horton v. Reliance Standard Life Ins.*

*Co.,* 141 F.3d 1038, 1040 (11th Cir. 2001).  *See also Cosgrove v. Raytheon Co.*

*LTD Plan,* 2008 WL 2009407 at *1 (11th Cir. 2008); *Stvartak v. Eastman Kodak*

*Co.,* 945 F.Supp. 1532, 1536 (M.D.Fla.1996) *aff'd,* 144 F.3d 54 (11th Cir.1998).

The plaintiff failed to produce any evidence, other than the June 26, 2006, letter

from Ms. Sechriest summarizing the plaintiff's treatment history, which refutes the

findings of the independent medical examiner and the peer reviewers.  This is true

even though the plaintiff's care providers submitted regular updates between

September and February and Broadspire informed the plaintiff on multiple

occasions that she was entitled to submit additional evidence in support of her

claim.  Based on the IME and the opinions of the three peer reviewers, the

defendant determined that the plaintiff was capable of performing other

occupations.  The court therefore concludes that the defendant's determination

was not "wrong."  As such, the court must affirm the decision of the defendant.[6]

*Williams*, 373 F.3d at 1138.

## Conclusion

---

[6]The court does not reach the issue of whether the plaintiff is entitled to long term disability ("LTD") benefits as the plaintiff would only be entitled to LTD benefits if she received 52 weeks of STD benefits.  SPD at 13.

After reviewing the entire administrative record, the court is of the opinion that the defendant's motion for summary judgment is due to be granted as the evidence established that the decision to terminate STD benefits was not "wrong." Therefore, under the law as set forth by the Eleventh Circuit, the defendant is entitled to judgment in its favor as a matter of law.

It is therefore **ORDERED** by the court that the defendant's motion for summary judgment be and hereby is **GRANTED**.

Having found that the defendant's motion is due to be granted, the court finds that the plaintiff's motion is due to be denied.  It is therefore **ORDERED** by the court that the plaintiff's motion for summary judgment be and hereby is **DENIED**.  In addition, the plaintiff's request for oral argument is found **MOOT**.

**DONE** and **ORDERED** this the 27th of June 2008.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE